UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HARRY B. SILVER, | ) |
| | ) |
| v. | ) CASE NO.: |
| | ) |
| CITY OF ALEXANDRIA and JULES R. GREEN, in his official capacity only, | ) JUDGE: |
| | ) |
| | ) MAGISTRATE: |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

NOW COMES Plaintiff, Harry B. Silver, the United States of America's oldest elected official at age 98, by and through undersigned counsel, who files this Complaint against the City of Alexandra and Jules R. Green for violating the Americans With Disabilities Act and Rehabilitation Act. The Defendants have prevented Mr. Silver from effectively representing his constituents by blocking him from attending Alexandria City Council Meetings via telephone. Despite the obvious risks associated with a 98-year-old attending public meetings during the Coronavirus Pandemic, the Defendants have nonetheless failed to accommodate Mr. Silver's disability and he has no other option than to file the instant Complaint.

**I.    INTRODUCTION**

1. COVID-19 is a respiratory illness caused by a novel coronavirus first identified during an investigation into an outbreak in Wuhan, China in November 2019.

2. Symptoms of COVID-19 include fever, cough, and shortness of breath. Some patients develop severe complications such as pneumonia in both lungs, multi-organ failure, and death. The preliminary outcomes among patients with COVID-19 in the United States indicate that the fatality rate was highest among persons over the age of 85.

3. COVID-19 is spread mainly through people who are in close contact with one

another through respiratory droplets produced when an infected person coughs or sneezes. It may also be possible for a person to get COVID-19 by touching a surface that has the virus on it and then touching their own mouth, nose, or eyes.

4. According to the Centers for Disease Control and Prevention ("CDC"), the period of time it takes for the number of COVID-19 cases to increase by a factor of two is six to seven days. Unless populations can slow the exponential growth, the caseload has the potential to overload healthcare systems very quickly.

5. At present, there is no specific antiviral treatment for COVID-19. Also, there is currently no vaccine to protect against COVID-19.

6. COVID-19 has rapidly spread across the planet. On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak could be characterized as a pandemic. At the time of filing, there are over 6.5 million confirmed cases worldwide with over 372,000 deaths reported.

7. The first case of COVID-19 in the United States was reported on January 21, 2020 in Washington State. By March 17, 2020, there were cases of COVID-19 reported in all 50 states and the District of Columbia.

8. On March 13, 2020, President Trump issued a proclamation that the COVID-19 outbreak in the United States constituted a national emergency. President Trump noted that the spread of COVID-19 could strain the United States' healthcare system.

9. On March 26, 2020, the United States became the country with the highest number of reported cases of COVID-19 of any country. As of the time of this filing, there are over 1.83 million confirmed cases in the United States and more than 100,000 deaths reported.

<u>Louisiana's Response to the COVID-19 Epidemic</u>

10. The first positive case of COVID-19 in Louisiana was reported on March 9, 2020. Governor Edwards declared a Public Health emergency on March 13, 2020.

11. Governor Edwards signed a statewide proclamation on March 13, 2020 that closed all K-12 public schools and halted gatherings of more than 250 people until April 13, 2020.

12. Governor Edwards increased the measures to reduce the spread of COVID-19 on March 16, 2020 by banning gatherings of more than 50 people, closing casinos, bars, and movie theaters, and limiting restaurants to delivery, take-out and drive-thru only.

13. On March 22, 2020, Governor Edwards issued a statewide "Stay at Home Order" in an effort to further fight the spread of COVID-19. The order went into effect on March 23, 2020.

14. Data compiled by an economist at the University of Louisiana at Lafayette indicated that Louisiana's number of confirmed COVID-19 cases grew 67.8 per cent in the first two weeks after the initial diagnosis on March 9, 2020.

15. On March 23, 2020, Governor Edwards made a request to President Trump for a statewide Major Disaster Declaration in response to the spread of COVID-19 in Louisiana. In his request, Governor Edwards stated, "Louisiana's current health care delivery system is quickly getting to the point where they are at capacity because of the treatment of COVID-19 patients."

16. President Trump declared a major disaster exists in Louisiana on March 24, 2020 and ordered federal assistance.

17. As of the date of this filing, there are over 40,000 positive cases of COVID-19 reported, with over 2,791 deaths.

**II.     JURISDICTION AND VENUE**

18. Mr. Silver's claims arise under federal civil rights law. This Court has jurisdiction

over Mr. Silver's claims of federal rights violations under Title II of the Americans with Disabilities Act and the Rehabilitation Act, which are enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

19. The venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in Rapides Parish, which is situated in the Western District of Louisiana.

### III.   THE PARTIES

20. Mr. Silver is 98-year-old veteran of the United States Army Air Corps, residing in Rapides Parish, Louisiana. He is clearly of suitable age and capacity to file this suit.

21. Mr. Silver is the United States' oldest elected official by virtue of his position as a Councilperson representing District Four in Alexandria, Louisiana.

22. Mr. Silver is a person with a disability. *See* 42 U.S.C. § 12102. Mr. Silver has a pacemaker which substantially limits the operation of his cardiovascular system, a major bodily function.

23. Mr. Jules R. Green is the President of the Alexandria City Council. As the President of the City Council, he presides over meetings of the Alexandria City Council. Defendant Mr. Green is sued in his official capacity for injunctive and declaratory relief and attorneys' fees/costs.

24. The City of Alexandria is a political entity located within Rapides Parish, Louisiana.

25. Upon information and belief, the City of Alexandria is a recipient of federal financial assistance as that term is used in the Rehabilitation Act.

26. Collectively, both defendants are referred to as "Alexandria."

**IV.     FACTS**

27.     Mr. Silver is an Alexandria Councilperson, Representing the Fourth District.

28.     The Alexandria City Council meets twice a month in person, at Alexandria City Hall.

29.     On or about January 26, 2020, Mr. Silver fell and broke his elbow.

30.     Because of this injury, he was forced to miss the February 4, 2020 Alexandria City Council Meeting.

31.     On or about February 13, 2020, Mr. Silver asked Ms. Donna Jones, the Executive Secretary of the Alexandria City Council, if he could attend the February 18, 2020 Alexandria City Council Meeting via telephone. Mr. Silver never received an answer and was thus forced to miss the February 18, 2020 Alexandria City Council Meeting.

32.     Mr. Silver repeated his request to attend the Alexandria City Council Meetings via telephone for the meetings on March 3, 7, 12, April 14, and 28.

33.     As detailed above, while Mr. Silver was recovering with a broken elbow, COVID-19 pandemic exploded in Louisiana.

34.     As a 98-year-old man with a pacemaker, Mr. Silver is particularly susceptible to COVID-19.

35.     As such, Mr. Silver's doctor, Dr. Vanda Davidson, M.D., urged Mr. Silver to "avoid any contacts until facemask and social distancing are not recommended by the department of health." Dr. Davidson memorialized this strong recommendation in a letter (the "Davidson Letter").

36.     Mr. Silver has followed his doctor's orders and is avoiding interactions with the public.

37. On or about May 7, 2020, Mr. Silver wrote to David Williams, City Attorney for Alexandria, stating that, "despite repeatedly informing the City that I am currently medically unable to physically attend the meetings of the Council, the City has failed to make its activities available to me so that I can continue to robustly represent and engage on behalf of my constituents." Mr. Silver enclosed the Davidson Letter.

38. Soon thereafter, Mr. Williams wrote to Mr. Green, unequivocally recommending that Mr. Silver be allowed to attend City Council Meetings via telephone, stating, "…the Americans with Disabilities Act could usurp state law, especially during the national public health emergency. As such, the Administration is strongly recommending that Alexandria City Council reasonably accommodate Councilman Silver by allowing him to participate in City Council meetings by teleconference."

39. Despite this "strong recommendation" by Mr. Williams, Mr. Green refused to allow Mr. Silver to attend City Council Meetings via telephone.

40. Mr. Green wrote back to Mr. Williams on May 19, 2020, not only denying the request that Mr. Silver be allowed to attend City Council Meetings via telephone, but stating, "It may be in order for the unexcused meetings [sic] that the salaries are returned to the City of Alexandria."

41. Defendants have made no attempts to meet and confer with Mr. Silver since sending the May 19, 2020 letter to Mr. Williams.

42. By refusing to provide a reasonable and/or meaningful accommodation, Mr. Silver has been unable to participate in the Alexandria City Council.

43. Instead complying with Federal Civil Rights law, or following the guidance of the City Attorney of the City of Alexandria (or showing any compassion whatsoever during a

pandemic), Mr. Green threatened to punish Mr. Silver for missing meetings by insisting that Mr. Silver return his salary as a Councilperson for the meetings he was unable to attend.

### Mr. Silver Was Subjected to Discrimination Under Title II of the ADA and The Rehabilitation Act

44. By and through Alexandria's conduct detailed above, Mr. Silver was subjected to discrimination under the ADA/RA.

45. By and through the above procedures, Alexandria has developed a policy/procedure where individuals with disabilities are singled out and treated differently solely on account of their disability.

46. Instead of providing Mr. Silver with his requested accommodation/modification, Alexandria chose to respond by outright denying Mr. Silver's request for reasonable accommodation and threatening to take his salary.

47. In addition to failing to provide a needed reasonable accommodation/modification, Alexandria refused and/or failed to engage in an interactive dialogue or otherwise work with Mr. Silver to develop an alternative accommodation.

48. By and through its conduct, Alexandria limited a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

49. Alexandria made an intentional choice to deny Mr. Silver's request for reasonable accommodation.

50. Alexandria had notice of Mr. Silver's disability, limitations, and need for accommodation, but nonetheless chose to deny Mr. Silver's request for reasonable accommodation.

51. By and through the acts set for above, Alexandria committed "intentional

discrimination" as that phrase is understood under Fifth Circuit case law.

## V.     CLAIMS FOR RELIEF

52.     Mr. Silver realleges and incorporates each and every foregoing paragraph.

53.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

54.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

55.     Title II of The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require that public entities affirmatively ensure that disabled people have meaningful access to programs provided.

56.     Upon information and belief, at all relevant times, Alexandria received federal funds.

57.     By refusing to provide Mr. Silver a reasonable accommodation, Alexandria violated Title II of the Americans with Disabilities Act and the Rehabilitation Act.

58.     By failing to modify their policies, procedures, or rules to accommodate Mr. Silver, Alexandria violated the ADA and the Rehabilitation Act.

59.     By failing to engage in an interactive dialogue, Alexandria violated the ADA and the Rehabilitation Act.

60. By failing to provide a reasonable accommodation, Alexandria violated the ADA and Rehabilitation Act.

61. Alexandria failed to provide Mr. Silver with meaningful access to the services at issue in this case.

62. Alexandria failed to provide Mr. Silver with program access to the services at issue in this case.

63. Alexandria discriminated against Mr. Silver with deliberate indifference to his needs as an individual with a disability.

64. Based on the facts alleged above, Alexandria intentionally discriminated against Mr. Silver.

65. Further, Alexandria was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ADA.

66. Mr. Silver suffered the following compensable damages: emotional distress, isolation, segregation, loss of opportunity, and invasion of his civil rights.

67. The harm sustained by Mr. Silver herein is the expected and foreseeable consequence of Alexandria's failure to comply with the requirements and mandates of the ADA and RA. These statutes and accompanying regulations exist to ensure that those with disabilities will have full use of places of the programs, services, and activities offered by individuals with disabilities. When Alexandria failed to adhere to its obligations under the statutes and implementing regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Mr. Silver in this lawsuit.

68. Mr. Silver brings this lawsuit seeking compensatory and nominal damages, injunctive and declaratory relief, and attorneys' fees and costs to redress Defendants' unlawful

discrimination on the basis of disability in violation of the ADA and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; With regards to Mr. Silver's request for nominal damages, it is Mr. Silver's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against Defendant, regardless of the amount, would deter Defendant from discriminating against other individuals in the future.

## VI.    RELIEF REQUESTED

69.    Wherefore Mr. Silver requests judgment be entered against Alexandria and that the Court grant the following:

a.   Declaratory relief.

b.   A permanent injunction requiring Defendants to comply with the requirements of the ADA/RA and to provide the appropriate accommodations and to reasonably accommodate Mr. Silver and others with disabilities.

c.   Judgment against Alexandria for Mr. Silver's asserted causes of action.

d.   Award nominal and compensatory damages under the ADA/Rehabilitation Act against Alexandria.

e.   Award costs and attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b).

f.   Issue an order retaining jurisdiction over this matter to ensure that the terms of any injunction are fully implemented.

g.   Order such other and further relief, at law or in equity, to which Mr. Silver may be justly entitled.

Respectfully submitted, this Wednesday, June 3, 2020

/s/ Andrew D. Bizer
B<small>IZER</small> & D<small>E</small>R<small>EUS</small>, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996