UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **HARRY B SILVER** | **CASE NO. 1:20-CV-00698** |
| **VERSUS** | **JUDGE DRELL** |
| **CITY OF ALEXANDRIA ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

### RULING AND ORDER

Before the court is a motion for preliminary injunction (Doc. 7) filed by Harry B. Silver ("Silver") an Alexandria City Council member who represents District Four of Alexandria, Louisiana. Mr. Silver is 98 years old. He suffers from significant, inoperable, aortic valve disease, and systolic heart failure and has a permanent pacemaker. Mr. Silver contends that these medical conditions which substantially limit the operation of his cardiovascular system, and his reliance upon a pacemaker to regulate his cardiovascular system, render him disabled, as defined by Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").

The extent of Mr. Silver's disability became apparent this year when the world was introduced to COVID-19. It is well known that the elderly and/or those who suffer from underlying medical conditions are particularly susceptible to contracting COVID-19 and succumbing to the virus. Mr. Silver is no exception. His physicians have directed and continue to direct him to avoid contact with the public.

Prior to Louisiana's first reported positive case of COVID-19, Mr. Silver fell and broke his elbow. Accordingly, on February 13, 2020, Mr. Silver contacted Ms. Donna Jones, Executive Secretary of the Alexandria City Council, and requested that he be able to attend the February 18, 2020, City Council meeting by phone. The fall and its consequences only affected his February

meeting attendance. March and later are subject to this action. Mr. Silver did not receive a response to that February request nor his repeated requests to attend meetings on March 3, 7, 12, April 14, and 28.

On May 7, 2020, Mr. Silver wrote to City Attorney for the City of Alexandria, Mr. David Williams and explained: "despite repeatedly informing the City that I am currently medically unable to physically attend the meetings of the Council, the City has failed to make its activities available to me so that I can continue to robustly represent and engage on behalf of my constituents." (Doc. 7-3) Mr. Williams wrote to City Council President, Mr. Jules R. Green, "strongly recommending" Mr. Silver be allowed to attend meetings by telephone as "the Americans with Disabilities Act could usurp state law, especially during the national public health emergency." (Doc. 7-4). Nevertheless, Mr. Silver was denied telephonic attendance. (Doc. 7-5). The only response from Mr. Green, was a snarky one sent to Mr. Williams, to wit:

> I am in receipt of your letter dated, May 15, 2020, in reference to policy and procedures of the City Council of Alexandria. Please refer to the Charter and Code of Ordinances for the City of Alexandria. Section 2-11 Council meetings and rules item (E) and Section 2-23; Item E, in addition, State of Louisiana [E]xecutive Department Proclamation Number 59 JBE 20200 Section 2: Public employees and State Offices Item C.
>
> Please refer to the United States District Court Western District of Washington at Seattle Item b: Clackamas v. Gastroenterology Associates., P.C. v. Wells, 538 U.S. 440, 445, 448 (2003). See the attached references.
>
> Attorney Williams, Mr. Silver has missed eight (8) council meetings, February 4, 18, March 3, 7, and 12, April 14, 28 and May 12. It may be in order for the unexcused meetings that the salaries are returned to the City of Alexandria.

(Doc. 7-5).

On June 3, 2020, Mr. Silver filed the instant lawsuit against the City of Alexandria and Mr. Jules R. Green, in his official capacity.[1]  Mr. Silver sought declaratory relief, a permanent injunction requiring Defendants to comply with the requirements of the ADA/RA and to provide the appropriate accommodations and to reasonably accommodate Mr. Silver and others with disabilities; judgment against the City of Alexandria for his asserted causes of action, nominal and compensatory damages under the ADA and Rehabilitation Act; costs and fees; and an order retaining jurisdiction to ensure enforcement of any injunctive relief.  (Doc. 1).

On June 23, 2020, following service of the complaint (Docs. 5 and 6) but prior to the filing of a response by either Defendant, Mr. Silver filed his motion for preliminary injunction.[2] (Doc. 7).  On June 26, 2020, this court set a hearing via Zoom video conference to be held July 2, 2020. (Doc. 9).  The Defendants filed memoranda in opposition. (Docs. 15 and 16).

On July 2, 2020, the court conducted the preliminary injunction hearing via a Zoom[3] video conference allowing attendance by all counsel of record, the parties (although only Mr. Silver was in attendance) and various members of the public, including the media, family members, residents of the City of Alexandria, and an Assistant Attorney General with the State of Louisiana.  During the hearing, counsel for Mr. Silver reiterated the request for a reasonable accommodation that would allow Mr. Silver to attend City Council meetings.  Counsel acknowledged that the initial request was for telephone participation, but video conferencing would be ideal.  Regardless, Mr. Silver would agree to whichever means was preferable to the City Council as least intrusive.  Council for the City of Alexandria argued that any remote access to meetings, be it by telephone

---

[1] Plaintiff's Title II ADA claims were brought solely against Mr. Green pursuant to the doctrine of Ex parte Young, 209 U.S. 123 (1908).

[2] The memorandum in support was amended on June 30, 2020. (Doc. 13).

[3] Zoom, and other types of video conferences, afford the ability for projection of the participants' faces, and verbiage in real time.  They are easily enabled to allow for public participation both by telephone and video, at the option of the party acting as host for the conference.

3

or video conference was unreasonable because Louisiana law required in person attendance. These concerns were echoed by counsel for Mr. Green. Additionally, counsel for Mr. Green questioned whether the ADA was even applicable to the matter as Mr. Silver was an elected official and not an employee of the City.

I.     Preliminary Injunction

Mr. Silver's entitlement to a preliminary injunction depends upon showing: (1) a substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if injunction is not granted; (3) that threatened injury to movant outweighs threatened injury to nonmovant; and (4) that grant of preliminary injunction will not disserve public interest. Fed.R.Civ.P. 65; Clark v. Pritchard, 812 F.2d 991, 993 (5th Cir.1987). Mr. Silver bears the cumulative burden of establishing all four elements. Id.; Mississippi Power &Light v. United Gas Pipeline, 760 F.2d 621 (5th Cir. 1985).

A.     Likelihood of Success on the Merits

Mr. Silver's claims are brought pursuant to the Title II of the ADA[4] and §504 of the Rehabilitation Act. 42 U.S.C. §12131, *et seq.* and 29 U.S.C. §794, *et seq.* "The rights and remedies afforded Plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under §504 of the Rehabilitation Act."[5] Bennett-Nelson v. La. Bd. of Regents, 431 F.3d

---

[4] Title II is unlike Title I of the ADA. While Title I addresses discrimination in the context of employment, Title II addresses prohibitions against discrimination in the context of public services.

[5] Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C.§12132. A "public entity" includes "any state or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government" and a "qualified individual with a disability means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural communication, or transportation barriers, or provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131.
    Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or

4

448, 454 (5th Cir.2005). The "only material difference" is the causation requirement under §504, the Plaintiff's disability must be the sole cause of the discriminatory action, not merely a motivating factor. Id.; Soledad v. U.S. Dept. Of Treasury, 304 F.3d 500, 505 (5th Cir.2002). However, the Fifth Circuit has deemed the different causation requirements as immaterial because both the ADA and Rehabilitation Act "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." Bennett-Nelson, 431 F.3d at 454-55 (internal citations omitted; further citation *infra*); Tennessee v. Lane, 541 U.S. 509, 533 (2004) (Finding Title II imposes "an affirmative obligation to accommodate persons with disabilities).

To make out a *prima facie* case under Title II or the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671–72 (5th Cir. 2004). "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005); see also Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio, 633 Fed. App'x 214, 215 (5th Cir. 2015) (adapting the failure-to-accommodate standard from Title I to Title II); Ball v. LeBlanc, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (same). For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because

---

under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. §794.

the plaintiff requested an accommodation or because the nature of the limitation was open and obvious. Windham v. Harris City, Texas, 875 F.3d 229, 236–37 (5th Cir.2017) (citing Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 164 (5th Cir. 1996)). A plaintiff's requested accommodation must also be "reasonable," meaning that it does not impose undue financial or administrative burdens or "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); see also Frame v. City of Arlington, 657 F.3d 215, 232 (5th Cir. 2011) (en banc).

  i. Qualified Individual with a Disability

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual...." 42 U.S.C §12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeking, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2). The medical evidence establishes that Mr. Silver is disabled by virtue of the fact his cardiovascular system is so compromised a pacemaker is required to regulate it.

  ii. Denial of Benefits of Services, Programs, or Activities or Otherwise Discriminated Against

Mr. Silver claims he requested a reasonable accommodation/modification that the Defendants summarily denied. "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." Ball v. LeBlanc, 792 F.3d 584, 596 n.9 (5th Cir. 2015). Plaintiffs ordinarily can satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms. Windham, 875 F.3d at 237.

It is our considered opinion that Mr. Silver's position in favor of injunctive relief is well taken, if limited to some degree. We find easily that he has a qualifying disability. That results, in substantial part, from the existence of the COVID-19 pandemic in our nation, and the existence of his obvious co-morbidities. Defendants argue that he is not entitled to claim those disabilities BECAUSE they are only COVID-related. In other words, because his disabilities are only situational, he cannot avail himself of the accommodations provided for by the ADA/RA. Such an argument fails, however, because of the simple and logical explanation of things the way they are. Neither the ADA nor the Rehabilitation Act contain any language to limit application to certain environmental or health-related situations. It makes complete sense to say that any application of these laws to these facts must be based upon a factual analysis that considers the totality of Mr. Silver's health circumstances in conjunction with one's social circumstances. Call it a totality of the circumstances evaluation. The determination of a qualifying disability in this case cannot be looked at in a vacuum. At the hearing, upon questions from the court, even counsel for the City conceded that the advent of the pandemic has turned virtually everything we do on its head. Generally, the pandemic is the unprovided-for case. In sum, consideration of Mr. Silver's documented serious underlying medical situation, in light of the pandemic's existence, is the proper way to make the disability determination here. It is not the reverse, as the defense suggests.

The defense also argues that Mr. Silver cannot prevail because he has not proven his disability was the causative fact in the apparent refusal to allow his participation by other than live attendance. However, the facts are these: Mr. Silver asked for the accommodations only because of his medical situation and the keen advice from his physicians that he would take an extreme risk of attending in person during the pandemic. His requests to the counsel clerk were ignored. The advice given to Council President (Mr. Green) by City Attorney Mr. Williams regarded the

same medical conditions, possible accommodation, and advice to allow Mr. Silver to participate remotely, was also ignored. The Defendants suggests, in argument, that perhaps there was some other reason why Mr. Silver was not allowed to participate, but not before this injunction motion was filed. Any suggestion of another reason for denial (the Open Meetings Law in Louisiana) was also not offered. Even worse is to suggest is that, if the issue was not Mr. Silver's health issue being THE conversation it could have been political retribution or something else. The record does not support such ruminations. We thus find that the sole cause of the Defendant's refusal to allow his virtual participation was Mr. Silver's serious medical conditions, his physician's advice to remain isolated, and the existence of the COVID-19 pandemic. No other conclusion fits the established facts here.

Raised for the first time by Defendants in this preliminary injunction proceeding, the existence of Louisiana's Open Meetings Law, La.R.S. 42:11, *et seq.*, is posited as a basis to deny the preliminary injunction. That law, in relevant part, provides:

Meetings of public bodies to be open to the public

A. Every meeting of any public body shall be open to the public....

B. Each public body shall be prohibited from utilizing any manner of proxy voting procedure, secret balloting, or any other means to circumvent the intent of this Chapter.

C. All votes made by members of a public body shall be via voice and shall be recorded in the minutes, journal, or other official, written proceedings of the body which shall be a public document.

The Defendants rely further upon Proclamation 30-JBE-2020, which allows for attendance via teleconference or video conference but only if "...the local political subdivision of the state ... first provide[s] a written certification that it will otherwise be unable to operate due to quorum requirements. Id.; 84-JBE-2020.

Defendants argue that the allowing of Mr. Silver's participation in council meetings by virtual means would violate the letter and spirit of state law. Here we are mindful that state law makes no provision for accommodation under the ADA/RA. Our analysis reveals that application of the ADA/RA in this circumstance would therefore have to be the result of preeminence of federal law over state law to the contrary. Counsel ably argues that the Open Meetings Law has the intent behind them to allow for full public participation in affairs of state at various levels… in other words, to prevent improper secret deals to be made by politicians. To that end, it promotes "sunshine." It is true that virtual participation by an individual council member is not exactly the same as participation by physical presence. Indeed, counsel for the defense urges that if we grant the injunctive relief sought here, we would violate 40 years of state precedent via Louisiana Attorney General opinions about telephonic participation by members. See La. Atty. Gen. Op. Nos. 78-1017, 14-0011, 13-0075, 02-0106, 99-385, 99-0034, 93-137, 92-166, 88-238. What is omitted from argument of counsel is the rise of significant new technologies such as Zoom and others that allow for public participation at meetings either in person or virtually, with members of the public being able to see and hear entire meeting contents by real time video, the full opportunity to ask questions and to participate fully. Indeed, the hearing on this preliminary injunction had actual video participation by members of the public, the media, and others. News stories hit the wire very shortly after the hearing attesting to its ease of use.

Significantly, also in a post hearing supplemental brief, Mr. Silver's counsel pointed out that Louisiana has now passed legislation that empower public bodies, like the City Council to hold meetings virtually, to wit:

> During a gubernatorially declared state of emergency pursuant to R.S. 29:724, *et seq.*, or a gubernatorially declared state of public health emergency pursuant to R.S. 29:766, *et seq.*, and as necessary to provide for the continuity of government and legislative operations during such an emergency, a member shall be permitted to

9

> participate in the debate and vote if the member participates remotely by telephone, teleconference, or other electronic means.
>
> . . .
>
> Not withstanding any other provisions of this Chapter to the contrary, a public body may conduct and its member may attend and participate in a meeting via electronic means provided the following:
>
> The presiding officer of the public body certifies on the notice of the meeting that the agenda of the meeting is limited to …Matters that are critical to the continuation of the business of the public body and that are not able to be postponed to a meeting held in accordance with other provisions of this Chapter due to a legal requirement or other deadline that cannot be postponed or delayed by the public body.

Act No. 302 of the 2020 Regular Session. While the new language is not mandatory to bodies like the Council, it authorizes during the pandemic, that things like the request made my Mr. Silver are not to be taken at odds with the Open Meetings Laws. As the Governor has wisely recognized, and the Legislature has affirmed, these times of the COVID-19 pandemic are extraordinary in their impact. These changes also recognize the need to be reliant upon all the tools we have, and especially the technology, so long as we continue to respect the need for fair and open governance. We thus find no substantial negative impact on the operation of city government by the granting of injunctive relief. Compliance will only require minimal logistical setup to effect and preserve the open meetings aspect of Louisiana's laws.

      iii.     Discrimination Based on Disability

As previously stated, where a public entity has an affirmative obligation to make reasonable accommodations for a disabled individual but fails to meet that obligation, "the cause of that failure is irrelevant." Bennett-Nelson, 431 F.3d at 454-55 (citation omitted). The court examines, instead, whether the requested accommodation was reasonable or whether it imposed an "undue financial or administrative burden" or required "fundamental alteration in the nature of the program." Id. Mr. Silver seeks a reasonable accommodation to which he is entitled by virtue

10

of his disability. He was summarily denied the accommodation despite the Defendants' duty to provide the same. The request was reasonable in that it simply allowed for virtual appearance and allowing the same by means such as video conferencing would not alter the nature of City Council meetings.

B.  Irreparable Injury

Mr. Silver has demonstrated irreparable injury will continue if the injunction is not granted. Without injunctive relief, Mr. Silver has no means of attending City Council meetings in any capacity. Such is a direct violation of Title II of the ADA and the Rehabilitation Act.

C.  Whether Defendants Will Suffer Injury

Defendants assertion that they will suffer an injury by having to violate the law is without moment. As explained, virtual attendance by Mr. Silver is nearly identical to physical presence at the meetings; thus, the spirit of the Open Meetings Law is not violated. In light of Louisiana's recent law, in fact, it is supported.

D.  Public Interest

Finally, virtual attendance at meetings benefits the public interests. Not only is Mr. Silver able to represent his constituents but members of the public who may be facing their own COVID-related obstacles may attend meetings of the Council.

II.  Conclusion

"Crafting a preliminary injunction is an exercise of discretion and judgment." Trump v. Int'l Refugee Assistance Project, —— U.S. ——, 137 S. Ct. 2080, 2087, 198 L.Ed.2d 643 (2017) (citation omitted). In addition, "a court 'need not grant the total relief sought by [the plaintiffs] but may mold its decree to meet the exigencies of the particular case.'" Trump, 137 S. Ct. at 2087 (citation omitted).

We limit the relief granted here to the time period covered by the Louisiana Governor's emergency orders on the COVID-19 virus. Any further injunctive request will require a new application. It is therefore

ORDERED, ADJUDGED and DECREED that a preliminary injunction is hereby issued addressed to Defendants, the City of Alexandria and Jules R. Green, its Council President, to allow Mr. Harry Silver to participate and vote in all regular or special Alexandria City Council meetings virtually and from interfering with such participation by Mr. Silver. The accommodation ordered is that Defendants shall make all necessary arrangements that will allow Mr. Silver to participate and vote and will allow the public access to such meetings to otherwise comply with the Louisiana Open Meetings Law.

THUS DONE AND SIGNED this 6 day of July 2020, at Alexandria, Louisiana.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT